LOTTINGER, Judge.
This action arises out of an accident which occurred on May 4, 1946. At that time the plaintiffs, Stanford Benoit and Joseph Plolloway, were employed by Morris and Meredith, Inc., a Texas corporation engaged in the oil well drilling business, which was drilling in Calcasieu Parish. These two men and one Clemence Thibodaux, also an employee of Morris and Meredith, Inc., together with one Richard P. Stout, an employee of Wilson Manufacturing Company, were all injured when a small fuel oil tank exploded while being welded by one Henry Guillory, an employee of Hunt Tool Company, which had contracted with Morris and Meredith, Inc., to do the welding work on the latter’s drilling rig. The Anchor Casualty Company, the other plaintiff herein and workmen’s compensation insurer for both Morris and Meredith, Inc. and Wilson *293 Manufacturing Company, paid to Benoit, Holloway, Thibodaux and Stout compensation aggregating the sum of $4,483.37.
Suit was filed by Benoit and Holloway in fort against the Hunt Tool Company and its liability insurer, Insurers Indemnity and Insurance Company, wherein they sought daiti'ages for the personal injuries sustained by them as a result of the negligent act of Henry Guillory, the Hunt Tool Company welder. The Anchor Casualty Company filed suit against Hunt Tool Company to recover the sums paid by it to Benoit, Holloway, Thibodaux and Stout. The three suits were consolidated for trial and appeal with separate decrees to be rendered in each case.
The trial court dismissed the plaintiffs’ suit holding that the Hunt Tool Company was not a third party within the intendment of the compensation act. On appeal to this, court, we held, one judge dissenting, that though Guillory was negligent and did come within the meaning of the act as such a person against whom such an action could be brought, he was, at the time of the accident, the borrowed servant of Morris and Meredith, Inc., and hence Hunt Tool Company was not liable for his tortious acts. Sec La.App., 45 So.2d 512. A writ of review was subsequently granted by the Supreme Court, which rendered judgment which annulled that of this court and remanded the case to us for the purpose of fixing the amount to be awarded each plaintiff. See 219 La. 380, 53 So.2d 137. The sole question to be determined, therefore, is the quantum of damages the plaintiffs are entitled to receive because of the injuries sustained.
Both men were only a few feet from the tank when it exploded. The burning fuel oil was thrown on each of them and ignited their clothes. The plaintiff Holloway’s face, ears, nose and hair were burned and he extinguished the flames by rolling in a mud pit. He was also burned on the back from approximately the knees up to the shoulders. He was confined to a hospital for a period of twenty-one days, and forced to stay in bed at home for an additional period of two. weeks. For three months he was unable to lie on his back and had to be on his stomach. For fourteen days following the accident he was given “shots” to sleep, and for a period of about twenty-six days because of his burned lips he was on a liquid diet and forced to,take his nourishment through a straw.
''This plaintiff was examined on March 12, 1948, by Dr. William- M, Farmer, who found him to be in a good general physical condition. He found “a slight dark discoloration of the skin around the ears, his neck, upper back, both buttocks, and the outer thigh region on both sides” but no scarring. He testified further that the discoloration was moderate and that it was the' result of first degree burns, which, covering the area of the body that they did, would be very painful.
The record shows that none of the injuries resulted in permanent disability except as to his hearing. He was examined. by Dr. John E. Sorrells on April 1, 1948, and found to have a nerve type of deafness amounting to 16% loss of 'hearing in the left ear and 18% loss of hearing in the right ear as to conversational tones. In the higher tones he was found to have a 60% loss in each ear and as to very high tones was completely deaf. Dr. Sorrells also testified that the ringing in the ears complained of was customary in a nerve type of damage that was the result of an explosion. He concluded by saying that he could hear the whispered voice and could also hear the ordinary conversational tones.
Dr. Peagram L. McCreary also testified as to the condition of Holloway’s hearing. He had examined him on September 4, 1946, September 6, 1946, and March 12, ■1948. On the first of these dates he found a loss of hearing of 43.8% in the left ear and 16.8% in the right ear. On September 6, 1946, the loss of hearing was 40.3% in the left ear and 20.19% in the right ear and on March 12, 1948, it was 30.2% in the left ear and 28.1% in the right ear. This witness agreed that the loss of hearing was permanent, and stated, as did Dr. Sor-rells, that Holloway could hear ordinary conversation. He was also of the opinion that Halloway should be able to perform the duties of a roughneck in an oil field (the *294 job he held when injured) in spite of the impairment in his hearing-.
Holloway testified that although he had tried to work as a roughneck for about three months, that due to his loss of hearing he was unable to do the work. He also stated that aside from that brief period of work and an Unsuccessful attempt to operate a restaurant for eleven months he had not been employed since the accident.
The other plaintiff, Stanford Benoit, was injured in much the same way as was Holloway. Fuel oil landed on and burned his legs, back, side, right arm, face, ears and head. Also, the hair was . burned completely off of his head. He was confined to a hospital for a period of approximately fifteen days during which time he was forced to lie on his back because of the burns on his side which extended almost to the front part of his body. He was administered sedatives in order to sleep until the day before he left the hospital, and after returning home he stayed in bed on his back for a period of about two weeks. He was unable to eat until the day before he left the hospital and took liquid nourishment through a straw during that time.
Dr. Farmer found Benoit “to be in very excellent condition and in good healthy condition to carry on regular work.” He found a ‘‘slight dark discoloration of the skin over the right shoulder and the right upper back and the right flank, over the right side of the abdomen and over both arms.” He found no scarring on the back, but did find scarring around the right ear and below the ear on the neck. The burns were all first degree burns, he said, with the exception of those on the right ear, where he suffered a second degree burn. The trial judge examined the plaintiff’s right ear and found a scar about two inches in length running from the top of the ear downward. He observed further that that ear appeared to be generally covered with scar tissue.
Dr. Sorrells found a 37% loss of hearing in the right ear and 16% in the left for ordinary conversational voice. Loss of the high tones in the right ear he estimated at 75% and in the left ear 6%. He could hear the whispered voice at 15 feet with the left ear and at 5 feet with the right ear. High tones were explained to be those resulting from the higher vibrations of sound waves, such as high “C” on a violin.
Dr.' McCreary found a 93% loss of hearing in the right ear and a 4.2% loss of hearing in the left ear. He fixed the combined loss, however at 15% and stated that he could see no reason why he could not perform ordinary work.
Benoit testified that because of the impairment in his hearing he was not able to perform the duties of an oil field roughneck. The record shows further that subsequent to the accident he held positions at various places -and that at the time of the trial he was working for the Livingston Ship Yard in Orange, Texas.
The plaintiff Benoit sought damages in the total amount of $19,687.00, which he itemized as follows:
(a) Pain and suffering, past, present and future — petitioner because of his poor hearing is occasioned much embarrassment due to his inability to hear conversation spoken in an ordinary and normal voice and has to ask for repetition. $2500.00
(b) Loss of wages for sixteen (16) weeks following the accident @ $74.20 per week. 1187.20
(c) Permanent loss of hearing with reference to the right ear in excess of 50%. 5000.00
(d) Loss of earning power— due to petitioner’s loss of hearing he is unable to command the same wages that he was receiving at the time he was injured. 10000.00-
(e) Disfiguring scars on face, head, neck and ear — before the accident petitioner was handsome in appearance. 1000.00
The plaintiff Holloway sought in the total amount of $22,613.00, which he itemized as follows : damages
(a) Pain and suffering, past present and future — peti *295 tioner because of his poor hearing is occasioned much embarrassment due to his inability to hear conversation spoken in an ordinary normal voice and has to ask for repetition. $2500.00
(b) Loss of wages for fifteen (15) weeks following the ^ accident @ $74.80 per week. 1113.00
(c) Permanent loss of hearing with reference to the right ear in excess of 20% and left ear in excess of 40%; almost constant presence of a ringing noise in ears. 7500.00
(d) Loss of earning power— due to petitioners’ loss of hearing he is unable to perform work of a similar character to which he was doing at the time of the accident and he has sustained an estimated loss of 10000.00
(e) Disfiguring scars on face, neck, ears and left arm. 1500.00
 Both Holloway and Benoit were paid compensation until discharged by their doctor. In addition, Anchor Casualty Company paid their hospital and medical expenses and subsequently the parties entered into a compromise compensation agreement. As a result, Holloway received $1300.00 in compensation and $544-90 for medical expenses incurred in connection with said injuries or a total of $1844.90. . Benoit received $1260.00 as compensation and $230.00 for medical expenses incurred in connection with said injuries or a total of $1490.00. We note that plaintiff Holloway was awarded $1300.00 . compensation and he is only claiming $1113.00, for loss of wages and that plaintiff Benoit was awarded $1260.00 compensation and he is only claiming $1187.20 for loss of wages. We are therefore, of the opinion that the compensation received by .these two plaintiffs offset the claims that they make for loss of wages and are therefore not entitled to an additional sum for said item. Counsel for defendant contends that under the holding of the court in Burke v. Commercial Standard Insurance Co., La.App., 38 So.2d 644, we should, in assessing damages, take into consideration the fact that the compensation claims were settled on the •basis of a small amount. Counsel for plaintiff, however, contends that under L.S.A.-R.S. 23 :1101, evidence as to the compromise is inadmissible and should not be taken into consideration. From the view we take of the case, however, it will not be necessary to decide that question, for we think the record shows very clearly that neither Benoit nor Holloway is appreciably disabled. As stated before, the only permanent disability, suffered by either is to their hearing, and, according to the medical testimony, we do not think that the impairment of either’s hearing is sufficient to interfere in a material way with the performance of the work to which they are accustomed. As we do not think that either plaintiff has proven a loss of earning power no damages will be allowed in that regard.
We think that the record as a whole clearly shows that plaintiffs Holloway and Benoit to be entitled to damages for the pain and suffering sustained by them as well as for such scars and disfigurement as they may have received, and loss of hearing. Neither, however, received any real scars, with the exception of the two inch scar on Benoit’s ear, and the discoloration present on parts of their bodies does not appear to be of a very noticeable nature due both to its color and location. The principal item of damage sustained by each is the pain and suffering experienced as a result of the burns. Even though the burns were almost entirely first degree burns, we can well imagine how extremely painful they must have been. We also think they should receive an award for the loss of hearing for even though it does not interfere with their employment as we have found, the disagreeableness of not being able to hear well, coupled with the constant ringing in the ears should be compensated for.
Numerous cases have been cited by counsel on both sides relative to the measure of damages awarded in cases dealing with burns. We have examined these au *296 thorities but prefer to rest our decision on the facts of this particular case. Of course, under the law, the Anchor Casualty Company is entitled to receive by way of preference from any amount awarded each plaintiff, the compensation payments previously made by it. We take into consideration this fact and also the fact that the Anchor Casualty Company appears as a party plaintiff, seeking not only the amounts paid Holloway and Benoit, but that paid to Clemence Thibodaux and Richard P. Stout as well. For that reason, the amount which would otherwise be awarded Holloway and Benoit will be '-decreased by the amounts paid by Anchor •'Casualty Company and judgment rendered -in the latter’s behalf for the full amount paid them, or $4483.37. The defendants do not question the amount of the claim of Anchor Casualty Company and agree in their brief that the amount of $4483.37 is -correct.
For the reasons assigned it is ordered, adjudged and decreed that Hunt Tool Company and Insurors Indemnity and Insurance Company be and they are hereby condemned, in solido, to pay unto the plaintiff, Stanford Benoit, the net sum of Four Thousand and No/100 ($4000.00) Dollars, together with interest at the rate of five per centum per annum from judicial demand until paid, and all costs of this suit.