353 So.2d 409 (1977)
Nicholas A. TARDO
v.
NEW ORLEANS PUBLIC SERVICE, INC., Melvena Johnson, wife of and Nelson T. Butler, Sr.
No. 8639.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 1977.
Rehearing Denied January 11, 1978.
Writ Refused February 24, 1978.
*410 Joseph N. Naccari, New Orleans, for plaintiff-third party defendant-appellant Tardo.
Emile L. Turner, Jr., Thomas M. Young, New Orleans, for defendant-third party plaintiff-appellant Melvena and Nelson T. Butler.
Floyd F. Greene, New Orleans, for defendant-appellee New Orleans Public Service, Inc.
*411 Before REDMANN, SCHOTT and BEER, JJ.
SCHOTT, Judge.
This is a tort action for injuries sustained by plaintiff on April 6, 1973, as he began to perform roofing work on a house owned by defendants, Mr. and Mrs. Butler, pursuant to a contract with them.
In preparation for the work he placed an aluminum ladder against the side of the house so that the ladder was resting against a galvanized gutter. The bottom of the ladder was in a narrow alley alongside the house and adjacent to a metal fence separating the premises from the neighbor's. As plaintiff started up the ladder with one foot on the rung of the ladder and one hand holding the ladder he placed his other hand on the metal fence in order to boost himself. At this time he received an electrical charge and was unable to free himself because his hands were "frozen." He kicked, pulled and struggled to free himself, losing consciousness during the process. A helper took hold of his shirt and pulled him from the ladder so that the electrical connection was broken.
The Butlers notified NOPSI who dispatched someone to investigate. He found that a metal downspout on the corner of the house close to the point where plaintiff had placed his ladder had been installed over NOPSI's electric wires serving this house and was pinching the wires in such a way as to scrape the insulation from the wires and expose them causing electrical contact with the downspout. Thus, the connecting gutter on which plaintiff's ladder had rested was charged with electricity and when plaintiff made the connection between the ladder and the metal fence his body conducted the electricity.
Made defendants along with the Butlers were NOPSI and Hamilton. The Butlers filed a third-party demand against Hamilton, seeking indemnification and Hamilton filed counterclaims against plaintiff as well as his co-defendants.
The trial court awarded plaintiff a judgment against the Butlers and Hamilton for $15,000 in general damages plus medical expenses, and in favor of the Butlers on their third-party demand against Hamilton for a like amount. All other demands of the parties were dismissed. From that judgment the Butlers have taken an appeal disputing both liability and quantum, and plaintiff has also appealed seeking to hold NOPSI liable and to increase the quantum of the award. Hamilton did not appeal or answer the appeal.
The first question to be considered is the liability of the Butlers to plaintiff. They specify errors on the part of the trial court in finding evidence sufficient to support the judgment against them and failing to find the plaintiff contributorily negligent. They also argue that the trial court committed an error of law which is implicit in his holding them liable to plaintiff solidarily with Hamilton.
The trial judge gave no reasons for judgment but he could have concluded that the Butlers were liable under either of several theories, namely, vicarious liability under LSA-C.C. Arts. 2320 and 2324; independent negligence consisting of the Butlers' failure to discover a reasonably discoverable hazard; or absolute liability without fault under C.C. Arts. 2322 or 2317.
C.C. Arts. 2320 and 2324 are as follows:
"Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."
"He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act."
The evidence shows that Hamilton had been in the roofing business since 1957 and did it on a part-time basis in 1970 when he performed this work for the Butlers. At this time he had a full-time job with the Orleans Parish School Board doing roofing and sheet metal work. He held himself out to the Butlers as "Richard Hamilton Roofing and Sheet Metal Works," and in that capacity had submitted an estimate to replace *412 the gutters and downspouts. He performed the work without any direction, control or supervision from the Butlers.
In order to determine whether Hamilton was an independent contractor or an employee we look to Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483 (1955), where the Court said that the term independent contractor connotes freedom of action and choice with respect to the undertaking. Its status presupposes a contract between the parties as well as the independent nature of the contractor's business so that it is not exclusive as to the means whereby it is accomplished. It should appear that the contract calls for a specific unit of work to be done according to the contractor's methods without being subject to control and direction as to the method of performance. It contemplates that the employer only controls the end result of the services. There must be a specified price for the undertaking agreed upon and a specific duration of time as opposed to termination at the will of either side. The Court went on to say:
"It is well settled by our jurisprudence that besides other factors, the most important test in determining `whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer.' It is also well settled that whether the employer `actually exercises control or supervision' over the movements and the services rendered by the employee, such a fact is of no great moment, the `important question is whether, from the nature of the relationship, he had the right to do so.'"
From our previous discussion of the relationship between the Butlers and Hamilton, and a consideration of the foregoing principles, we must conclude that Hamilton was an independent contractor. Plaintiff relies principally on the vagueness of Hamilton's testimony in which he could remember no details of this job and very little about his contact with the Butlers. But he did recognize his written "contract" and acknowledged that he performed the work at the site. Despite the weakness of his testimony, however, that of the Butlers was sufficient to show that this was a typical roofing job whereby they were interested only in the end result of having new gutters and downspouts, they agreed to pay a price for that work and they exercised absolutely no control or direction over Hamilton as to his methods whatsoever. Hamilton was an independent contractor and neither Art. 2320 nor Art. 2324 is applicable in his relationship to the Butlers.
Plaintiff asserts the Butlers were negligent in selecting a contractor who they should have known was incompetent for the job, but we do not find evidence to this effect. Hamilton was an experienced roofer when he was employed by the Butlers and he had the outward appearance to the Butlers of a regular roofing contractor as evidenced by the estimate and bill he gave to them. Neither do we find merit in plaintiff's charge of negligence on the part of the Butlers for failing to inspect the work done by Hamilton. While the technical witnesses at this trial testified that the placing of the gutter spout over the electric lines constituted improper workmanship, we cannot say that a typical lay person is charged with such knowledge and furthermore the defect was not readily apparent even to observers more knowledgeable than the Butlers. In fact, plaintiff himself had inspected the premises prior to submitting his bid and he was not aware of the hazard.
The Butlers have argued that the award of indemnity to them by the trial judge was tantamount to a finding by him that they were only vicariously liable for Hamilton's tort. If they were liable as joint tort-feasors they could only enforce contribution against Hamilton. Hebert v. Blankenship, 187 So.2d 798 (La.App. 3rd Cir. 1966). Thus, they say that we must reverse the judgment against them if we find there is no vicarious liability. But we deem this to be an oversimplification.
In Truxillo v. Gentilly Medical Building, Inc., 225 So.2d 488 (La.App. 4th Cir. 1969), an invitee in a building slipped and fell and was awarded a judgment against the building owner and the custodial *413 company in solido for his injuries. The court allowed the building owner indemnity against the contractor even though they were cast in solido on the theory that the negligence of the contractor caused injury to the building owner who is only liable on theoretical grounds for damage actually inflicted by the contractor. In the same way, if the Butlers are liable to plaintiff on theoretical grounds, they have been caused injury by Hamilton who actually inflicted the injury on the plaintiff. It is on this basis that we must now address ourselves to the plaintiff's theory of liability on the Butlers' part based on C.C. Art. 2322, which provides as follows:
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
In Davis v. Royal Globe Insurance Companies, 257 La. 523, 242 So.2d 839 (1971) the Court considered a landlord's liability under Art. 2322 to his tenant's child who became ill from eating flakes of lead based paint. The Court held that the "ruin" contemplated by the article has reference to the actual fall or collapse of a building or one of its components. The facts of the instant case simply do not come within that definition. A different result would be reached under Adamson v. Westinghouse Electric Corporation, 236 So.2d 556 (La.App. 4th Cir. 1970) but we deem that case's reasoning to be overruled by the Davis case by implication.
Next, plaintiff asserts liability on the part of the Butlers based on Loescher v. Parr, 324 So.2d 441 (1976) in which the Supreme Court extended holdings in Turner v. Bucher, 308 So.2d 270 (1975) and Holland v. Buckley, 305 So.2d 113 (1974), imposing liability without proof of negligence for delictual acts of a small child and a dog respectively to liability for damages caused when a diseased tree fell from defendant's property on plaintiff's automobile. The Court based its decision on Art. 2317, which provides;
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."
(Emphasis supplied)
The Court reasoned that the tree was a thing in the custody of defendant and liability thus arose out of the article.
However, at page 449 the Court concluded:
". . . The owner-guardian of the defective tree is therefore liable for his legal fault in maintaining the defective tree and in preventing its vice from causing injury, unless he prove that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force."
(Emphasis supplied)
The question becomes whether or not the Butlers' proof that plaintiff's injury was caused by the fault of a third person, Hamilton, exonerates them from liability to plaintiff. In the Loescher case the court considered defendant's argument that wind which contributed to the fall of the diseased tree was the "irresistible force" spoken of in the article but found that the wind in question, while high and gusty, "was not so abnormal as to be unforeseeable" and declined to exonerate defendant. They thus equated the irresistible force spoken of in the article with an unforeseeable condition. Unlike the wind in the Loescher case, the injury producing fault of Hamilton was abnormal and the unusual and hazardous condition created by him was unforeseeable by the Butlers.
But does liability under C.C. Art. 2317 and the Loescher case attach considering that almost three years intervened between the time that Hamilton installed the downspout over the electric wire and the time of plaintiff's injury? Did the Butlers' maintenance of the defective thing over such a long period of time supersede Hamilton's fault? We believe that the very passage of so much time strengthens the Butlers' position. Having employed Hamilton *414 to perform this relatively simple task in 1970 and believing it was done properly, how could they foresee that his fault would manifest itself in 1973 when plaintiff met with his accident?
There may be an inherent contradiction between holding an owner liable for maintaining a defective thing and exonerating him from liability where he can prove that the fault was caused by a third person because the imposition of liability without fault would seem to make irrelevant the fault of a third person. But the exception was made by the Supreme Court and under the facts of this case it seems to have application with the result that the Butlers were not liable under Art. 2317.
We have therefore concluded that there is no basis for holding the Butlers liable to plaintiff and will reverse plaintiff's judgment against them.
On plaintiff's appeal he argues that the part of the electric wires which was pinched behind the downspout was the property of NOPSI and that NOPSI violated a duty to insulate the wires properly and to exercise the highest degree of care and constant vigilance in inspecting and maintaining them in perfect condition. The evidence shows that this installation was properly made by NOPSI in 1968. It had no knowledge whatsoever of any deficiency in the wires until plaintiff's accident was reported and its investigator learned that the downspout had been installed over their wires. Under these facts the trial judge correctly found that plaintiff did not prove a case of negligence against NOPSI.
Because NOPSI was the legal owner of that portion of the wires behind the downspout, we find it appropriate to discuss NOPSI's liability under Art. 2317 and the Loescher case, even though the parties have not raised the issue. In the first place, NOPSI's technical ownership of the wires did not necessarily constitute them as things in their custody under the circumstances. But assuming that they were, the same disposition we made of this argument with respect to the Butlers applies likewise to NOPSI. They proved that plaintiff's damage was caused by the fault of Hamilton, and under the Loescher case they are exonerated from liability. Likewise, the passage of three years of time since Hamilton committed his act of negligence did not supersede his fault so as to make NOPSI liable to plaintiff.
Accordingly, that portion of the judgment in favor of plaintiff and against defendants, Nelson T. Butler, Sr. and Mrs. Melvina Johnson Butler, is reversed and set aside and there is judgment in favor of these defendants, dismissing plaintiff's suit against them at his cost.
REVERSED AND RENDERED.
BEER, J., concurs with written reasons.
BEER, Judge, concurring.
I agree with the majority opinion regarding liability.
In my view, the case requires additional comment with respect to quantum since it may be subject to further judicial scrutiny. The amount of the award is unsupported by the evidence. In my view, the absolute maximum range of award which this record can conscionably support is $3,000 to $4,000. Half of that would be quite adequate.