405 So.2d 651 (1981)
Patricia Ann CREAMER, Natural Tutrix of the Minor, James Timothy Hinds, Plaintiff-Appellee.
v.
EMPIRE FIRE & MARINE INSURANCE COMPANY, et al., Defendants-Appellants.
No. 8404.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1981.
Rehearing Denied November 20, 1981.
*652 Watson, Murchison, Crews, Arthur & Corkern, Ronald E. Corkern, Jr., Natchitoches, for defendants-appellants.
Thomas & Dunahoe, G. F. Thomas, Jr., Natchitoches, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX and DOUCET, JJ.
DOMENGEAUX, Judge.
James Timothy Hinds (Tim), aged 14, severely injured his right knee on March 2, 1979, when he slipped in a puddle of water on the floor while roller-skating at the Hot Wheels Skating Palace in Natchitoches, Louisiana. His mother, Patricia Ann Creamer, as Tim's natural tutrix, filed suit for damages against the owner of the Skating Palace, Claude Cochran, and the liability insurer of the skating rink, Empire Fire & Marine Insurance Company (Empire). Judgment awarding plaintiff special damages of $2,624.00 and general damages of $20,000.00 was signed on January 5, 1981.
Defendants have appealed to argue that the trial court erred in (1) failing to find that plaintiff either voluntarily assumed the risk of injury or was contributorily negligent; (2) finding that the defendant-owner was either negligent or strictly liable under C.C. Art. 2322[1]; and (3) awarding plaintiff $20,000.00 for pain, suffering, and disability.

FACTS
The trial court accepted Tim's version of the accident. We cannot say the court erred in doing so since Tim's version of the accident was the only version offered, and his testimony was not contested or contradicted except by some minor inconsistencies between his deposition and his trial testimony which were more attributable to forgetfulness than a propensity to prevaricate. The trial court rightly disregarded these inconsistencies.
According to Tim's testimony, he entered the Skating Palace at about 8 P.M., and began skating at 9:15 P.M., after paying a $5.00 fee. While skating he noticed some water on the floor in the back of the building. Employees of the rink also noticed the water and cautioned the skaters to be careful, but allowed the patrons to continue skating. Meanwhile the air conditioning system was turned on in an effort to dry the floor.
*653 After becoming aware of the area where water had accumulated (he discovered it after skating through it) Tim continued to skate, successfully avoiding the one area of the floor he knew was wet. Later in the evening, around 11:30 P.M., as he was going around a curve, a little girl ran out in front of him. In an effort to avoid her, Tim swerved, thereby involuntarily venturing to a part of the floor he had not yet traversed. He would not have traversed that area had he not swerved to avoid injuring the little girl because it was near a corner and out of the normal skating pattern. There his skates found another puddle of water, slipped out from under him, and caused him to injure his knee.

NEGLIGENCE OR STRICT LIABILITY?
The trial judge did not specify whether the owner was negligent or strictly liable under La.C.C. Art. 2322. After reviewing the facts we conclude that the owner or his employees were negligent in allowing skaters to skate while the skating surface was in a dangerous condition.
The owner of the rink, Claude Cochran, explained at trial that a sudden change in weather conditions sometimes caused his skating rink floor to become moist or slick. He said that if the floor became too slick his employees were instructed to pull the skaters off the floor. If the floor was not too slick, however, he or his employees would turn on the air conditioner in an effort to dry the floor but would let the skaters continue skating, cautioning them to be careful because of the wet floor. On the occasion in question, however, Mr. Cochran was not there and of the two "floor managers" he said were working that night one did not testify and the other testified that he was not there that night. In addition, no employee filled out an accident report after Tim's accident, contrary to what the owner said was part of the rink's policy.
The owner and his employees were aware that an invisible layer of moisture occasionally covered portions of the skating surface. They were also aware of the danger of skating over these wet spots. Yet on the night in question, the employees let the skaters skate while they attempted to dry the skating surface by turning on an air conditioner. Unfortunately, their efforts did not produce timely results. We conclude that the owner's employeesand thus the ownerwere negligent in allowing patrons to skate while the floor was in a condition known by the employees and the owner to be dangerous.
Although we believe that water on an indoor skating surface creates an undue risk of injury to skating patrons, we cannot for that reason conclude that the Hot Wheels Skating Palace was ruined or defective, especially since there is no evidence of a "ruin" caused either by neglect to repair or by a vice in the original construction of the building.

ASSUMPTION OF RISK/CONTRIBUTORY NEGLIGENCE
Because judgment was rendered in plaintiff's favor, we must assume the trial court rejected the defendants' argument that Tim assumed the risk or was contributorily negligent.
According to Tim's testimony, he did not see and was not aware of the patch of moisture which caused his fall. Under the rationale of Dorry v. Lafleur, 399 So.2d 559 (La.1981), a case factually similar to the one before us, Tim's lack of actual knowledge of the puddle precludes a finding that he assumed the risk of injury unless it can be shown that he must have known or been aware of the puddle which caused his fall. Defendants have not shown that Tim must have been aware of the puddle, and we cannot conclude that the risk of slipping on the invisible patch of moisture is one that Tim must be held to appreciate, since the management, by allowing its patrons to continue skating, implied that the floor was safe for skating so long as known puddles of water were avoided. Defendants have failed to show that the puddle was an open and obvious hazard or that the puddle was *654 pointed out to Tim before he fell. Therefore Tim never assumed the risk of slipping on that puddle.
Was Tim contributorily negligent? If we were deciding that the strict liability principles of La.C.C. Art. 2322 applied, then we would not even consider the question because Dorry v. Lafleur held that "[b]ecause the `ruined' building here [another roller skating rink] housed a commercial enterprise to which plaintiff had paid the price of admission, we hold that in this case plaintiff's contributory negligence is not a defense to his claim."
Article 2322 controlled the situation in Dorry because several leaks in the ceiling of the skating rink permitted water to leak to the floor during a heavy rain, causing puddles to form. The roof of the skating rink was clearly defective or in a state of ruin. As we mentioned earlier, however, there is no evidence in the instant case that Mr. Cochran's Skating Palace was defective. Since strict liability is not applicable, the fee-paying customer at this skating rink is not entitled to assert that his contributory negligence (if any) is not a defense to his claim because that holding from Dorry is limited to strict liability situations.
Nevertheless, we conclude that the defendants have not proven that Tim was contributorily negligent. Even though he continued skating after learning that water was on the floor, we note that the rink's management allowed him to do so. The fact that the management allowed Tim and others to continue skating, after warning them to be careful of the water on the floor, might imply to the reasonable person that it is safe to skate so long as one avoids areas where water is known to have accumulated. This is precisely what Tim did. The fact that he did slip in a puddle and fall does not indicate that he did so because he was negligent. Quite to the contrary, the facts reveal he happened upon the puddle in a corner of the rink involuntarily after swerving to avoid injuring a little girl. He did not see the water prior to slipping in it. We believe his actions were reasonable under the circumstances and did not constitute contributory negligence.

GENERAL DAMAGES
As a result of his skating mishap, Tim suffered an incomplete tear of the posterior horn of the lateral meniscus (cartilage) and a large chondrolar fracture of the lateral femoral condule. A four-hour operation was performed on March 16th by Dr. Donald F. Overdyke, Jr., and two incisions were made on Tim's knee in an effort to find missing pieces of cartilage. The effort failed. Tim was hospitalized from March 16th-24th. He required crutches for support for eight weeks, and he could not attend classes for the remainder of the Spring 1979 school year. He was not released to normal activities by Doctor Overdyke until August 30, 1979. Tim testified that the pain was severe the first few days following the accident and that at the time of trial it still hurt about once a week. The pain is moderate enough that he does not complain about it, but it does hurt.
Doctor Overdyke opined in his deposition that Tim would experience residual problems with the knee but he could not hazard a guess as to the extent of the residual disability or when that disability would manifest itself.
Considering the extent of Timothy's injury, including the two long operative scars, the length of his convalescence, his pain and suffering, and the residual impairment, we believe the $20,000.00 award for general damages is within the court's discretion and is not excessive.

DECREE
For the above and foregoing reasons, the judgment of the district court is affirmed at defendants' costs.
AFFIRMED.
CULPEPPER, J., concurs and assigns reasons.
*655 CULPEPPER, Judge, concurring.
I concur in the result. As I understand Dorry, a majority of the Supreme Court does not hold contributory negligence is not a defense to strict liability. The Dorry opinion was written by a justice ad hoc and signed by only two justices. One of the justices dissented, and three concurred in the result only.
Moreover, the holding by the majority in the present case that contributory negligence is not a defense to strict liability is dicta, because we correctly conclude that strict liability does not apply here.
Nevertheless, I concur in the holding that the owner of the skating rink was negligent, and that plaintiff's son was not contributorily negligent and did not assume the risk.
NOTES
[1] Art. 2322. The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.