470 So.2d 969 (1985)
SOVERIGN INSURANCE COMPANY, et al.
v.
TEXAS PIPELINE COMPANY, et al.
No. CA 84 0321.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
Rehearing Denied June 27, 1985.
*970 James M. Funderburk, Houma, for plaintiff and appellee Soverign Ins. Co.
Larry Port and Margaret David, New Orleans, for defendant and appellant Texas Pipe Line Co.
Gerald M. Dillon, New Orleans, for third party defendant Atlas Const. Co.
Before GROVER L. COVINGTON, C.J., and LOTTINGER, EDWARDS, COLE, WATKINS, SHORTESS, CARTER, SAVOIE, LANIER, CRAIN, ALFORD and JOHN S. COVINGTON, JJ.
LANIER, Judge.
This is a suit for damages in tort alleging a roadbed on private property collapsed causing a cement truck to roll over and be totally destroyed. The property damage insurer of the truck paid the amount due under its policy to the truck's owner. This suit was then brought by the truck's owner and insurer against the lessee-custodian of the land on which the roadbed was located claiming strict liability based on La.C.C. art. 2317. The lessee-custodian filed a third party demand against an independent *971 contractor doing construction work on the leased premises alleging the truck was on the premises in connection with the contractor's work and the contractor had an agreement with the lessee-custodian to indemnify it from such loss. The original plaintiffs filed supplemental and amending petitions and made the contractor and the owner-lessor of the property parties defendant. The trial court held as a fact the roadbed was defective, found the lessee-custodian liable under La.C.C. art. 2317 and rendered judgment in favor of the truck's insurer for $45,500 and in favor of the truck's owner for the $1,000 deductible. The trial court dismissed the lessee-custodian's third party demand against the contractor because the "language of the indemnity clause is not broad enough" to make the contractor liable. The main demands against the owner of the property and the contractor were also dismissed. This suspensive appeal followed.

FACTS
Commencing October 1, 1980, Texaco, Inc. (Texaco) leased a tract of land in Terrebonne Parish, Louisiana, to the Texas Pipeline Company (Texas) for a tank farm and pump station. On January 27, 1981, Texas entered into a contract with Atlas Construction Company, Inc. (Atlas) for the construction of three crude oil storage tank foundations. The contract contained the following indemnification provision:
Contractor shall fully defend, protect, indemnify and hold harmless the Company, its employees and agents from and against each and every claim, demand or cause of action and any liability, cost, expense (including but not limited to reasonable attorney's fees and expenses incurred in defense of the Company), damage or loss in connection therewith, which may be made or asserted by Contractor, Contractor's employees or agents, subcontractors, or any third parties, (including but not limited to Company's agents, servants or employees) on account of personal injury or death or property damage caused by, arising out of, or in any way incidental to, or in connection with the performance of the work hereunder, whether or not Company may have jointly caused or contributed to, by its own negligence, any such claim, demand, cause of action, liability, cost, expense, damage or loss, except such as may result solely from the Company's negligence.
On September 30, 1981, a cement truck, owned by Porche Brothers Lumber and Supply, Inc. (Porche), insured by Soverign Insurance Company (Soverign) and being driven by Fred Towery, was delivering cement to the construction site on the leased premises. Soverign and Porche contend the roadbed on the leased premises collapsed because it was defective causing the truck to roll over into a ditch. Texaco and Texas contend Towery backed the cement truck off of the roadway causing the accident.
The parties stipulated the truck was a total loss. It was insured for $49,500 with a $1,000 deductible. The salvage value was $3,000. Soverign paid Porche $45,500 and obtained a conventional subrogation.

CAUSE IN FACT
Texas contends the judgment finding it at fault is clearly contrary to the law and evidence presented at trial. In particular, Texas contends the testimony of Ronald Scott should not have been accepted by the trial court and, thus, the only credible evidence of record shows the truck was driven off the roadway causing the accident.
Ronald Scott (the only eyewitness to the accident) testified he was a cement truck driver for Porche and on the day in question drove his truck to the Atlas construction site. After he poured his load, he backed up, got out of his truck and let air out of his air tank. Towery was backing his truck up in the same area. Scott was watching Towery back up. The wheels of Towery's truck were on the roadway about two feet from its edge. The roadway caved in and the truck rolled over into the ditch. Towery jumped out of the window *972 of the truck. Scott was two or three steps from the incident.
Photographs of the scene of the accident show a portion of the roadway caved in.
The district court judge made the following factual findings:
After reviewing the testimony and evidence submitted the Court finds the following. Eyewitness testimony indicates that the truck was, in fact, on the roadway when the accident occurred. The contention of the Defendant that the truck was partially on the shoulder is not substantiated by the testimony or the evidence. Photographic evidence and the testimony lead the Court to conclude that the truck, in fact, never left the roadway and that a portion of the roadway did, in fact, cave in and that this case in did, [sic] in fact, cause the accident and resulting damage.
Causation is a factual question and a trial court's determination of cause is entitled to great weight. McSweeney v. Department of Transportation and Development of Louisiana, 442 So.2d 659 (La.App. 1st Cir.1983); Rivet v. State, Department of Transportation & Development, 434 So.2d 436 (La.App. 3rd Cir.1983). We have carefully reviewed the record and conclude the factual ruling on causation is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
This assignment of error is without merit.

ADMISSIBILITY OF ACCIDENT SCENE STATEMENT BY TOWERY
Texas contends the district court judge committed error by refusing to admit into evidence statements made at the accident scene by Towery to Mack Brannon, an employee of Texas.
Brannon testified he arrived at the accident scene shortly after the accident occurred and spoke to Towery. When Brannon commenced to recite what Towery told him, counsel for Porche and Soverign objected on hearsay grounds, and the court sustained the objection. The testimony was then proffered. Brannon stated Towery told him "[w]ell I guess I backed too far." Towery was also very concerned about losing his job because of the accident. Texas contends these statements are admissible under two different exceptions to the hearsay rule: (1) admission and (2) excited utterance. The evidence shows Towery was in the scope and course of his employment with Porche when the accident occurred. Porche is therefore bound by his statements. Pennington v. F.G. Sullivan, Jr., Contractors, Inc., 416 So.2d 192 (La. App. 1st Cir.1982), writ denied, 421 So.2d 248 (La.1982). The statements attributed to Towery by Brannon qualify as admissions. La.R.S. 15:449-450; D. Binder, The Hearsay Handbook, Exception 28, 316 (1975); McCormicks Handbook of the Law of Evidence, § 262, 628 (E.Cleary 2nd ed. 1972). The district court committed error by not admitting the statements into evidence.
After giving the excluded evidence due consideration, we nevertheless conclude the ruling by the district court on the factual issue of cause is not clearly wrong. Cf. Terry v. Lagasse, 266 So.2d 231 (La.App. 4th Cir.1972).

INDEMNIFICATION
Texas contends the district court committed error by concluding its indemnification agreement with Atlas was not broad enough to include indemnification for damages arising out of strict liability, citing Strickland v. Tesoro Drilling Co., 434 So.2d 424 (La.App. 1st Cir.1983), writs denied, 441 So.2d 211, 214, 215 (La.1983), and Hyde v. Chevron U.S.A., Inc., 697 F.2d 614 (5th Cir.1983).
It is well settled that a contractual provision will not be construed to indemnify a person for his sole negligence unless the provision shows a clear and specific intent to do so. Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977); Phillips v. Equitable Life Assurance Company of the United States, 413 So.2d 696 (La.App. 4th *973 Cir.1982), writ denied, 420 So.2d 164 (La. 1982); Tirante v. Gulf States Utilities Company, 412 So.2d 128 (La.App. 1st Cir. 1982), writ denied, 414 So.2d 389 (La.1982). One reason for this rule of strict construction is set forth in Arnold v. Stupp Corporation, 205 So.2d 797, 799 (La.App. 1st Cir.1967), writ not considered, 251 La. 936, 207 So.2d 540 (1968), as follows:
The general rule is stated thus: `A contract of indemnity will not be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts, where such intention is not expressed in unequivocal terms. 27 Am.Jr., Indemnity, § 15, page 464; 42 C.J.S. Indemnity § 12, page 580.' The established principle supporting the rule is that general words alone, i.e., `any and all liability', do not necessarily import an intent to impose an obligation so extraordinary and harsh as to render an indemnitor liable to an indemnitee for damages occasioned by the sole negligence of the latter.

[Emphasis added].
There is a second reason for this rule of strict construction. There are four types of liability which constitute fault in Louisiana law (La.C.C. art. 2315, et seq.): intentional, negligent, strict and absolute. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982); F. Stone, Tort Doctrine § 61 in 12 Louisiana Civil Law Treatise 85-89 (1977). The rationale for our fault system for the reparation of damages is set forth in F. Stone, Tort Doctrine § 59 in 12 Louisiana Civil Law Treatise 82 (1977), as follows:
The philosophy underlying the concept of liability based on fault is that each person in society is expected to comply with the generally accepted standards of the society in which he lives: as long as he does so, he is not liable for damage which he causes to another since he is not at fault: if he fails to comply he becomes bound to repair the damages caused by his non-compliance (fault). The aim of such a system is in a sense to reward the good citizen (le bon pere de famille) and to burden the erring one to the end that responsible individuals be developed who act according to the generally accepted societal standards.
[Footnote omitted].
An agreement by an innocent person to indemnify a party at fault for the damages for which he is responsible is contrary to this basic philosophy. If a person knows another will pay for the damages caused by his sole fault, he will tend to be less careful with his conduct and the persons or things for which he is responsible than if he had to bear the burden of the loss.[1]Hyde, 697 F.2d at 632-633. Thus, agreements which purport to indemnify for the sole fault of another (which are not contra bones mores)[2] should be strictly construed because they contravene the basic philosophy for the fault system.
Should the strict construction rule applicable to indemnification for negligent liability also be applicable to such agreements for strict liability? Since both types of liability are forms of fault and are rooted in the same basic philosophy, we must examine the differences between them to answer this question. In Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720, 724 (La.App. 1st Cir.1983), appears the following:
The policy reasons for the strict liability theory of recovery (fault under La. C.C. arts. 2317, 2318, 2320, 2321 and 2322) are set forth in Loescher v. Parr, supra, [324 So.2d 441] 446 as follows:

*974 `When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others.
`The fault of the person thus liable is based upon his failure to prevent the person or thing for whom he is responsible from causing such unreasonable risk of injury to others. Thus, the person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating person or thing bears the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of his failure to prevent the risk. His fault rests upon his failure to prevent the risk-creating harm and upon his obligation to guard against the condition or activity (by the person or thing for which he is responsible) which creates the unreasonable risk of harm to others.'
In a strict liability situation where both parties are free from negligence, the burden of the loss is placed on the person legally responsible for the person or thing which causes the loss....
In Kent, supra, the court observed that the only difference between the strict liability and negligence theories of recovery was the element of the defendant's scienter. Under the negligence rule, it must be shown that defendants either knew or should have known of the risk, whereas under strict liability the claimant is relieved only of proving the defendant knew or should have known of the risk. In either case, the claimant must still prove an unreasonable risk of harm that resulted in damage. While the basis for determining the existence of the duty is different between strict liability and negligence, the duty which arises is the same. Kent v. Gulf States Utilities Company, supra, 497-498. [Bolding added].
Since the duty imposed on a person under strict and negligent liabilities is the same, there is no rational reason why the rules of construction applicable to indemnification agreements concerning these types of fault should not also be the same. Indeed, because scienter is not at issue in strict liability, such liability is easier to prove, and there is a greater risk that the person subject to such liability (whether directly or by an indemnification agreement) will be cast in judgment. As such, strict liability is more onerous than negligent liability on the person assuming it. If strict liability is more onerous than negligent liability on the party assuming it, it is less likely such person would knowingly assume "an obligation so extraordinary and harsh."[3]
In the instant case, Texas retained custody and control of the leased premises, although it had a construction contract with Atlas. The sole cause of the loss was the defect in the roadway for which Texas was strictly liable.[4] The indemnification agreement between Texas and Atlas does not specify that Atlas agrees to indemnify Texas for Texas' sole strict liability.[5] We believe logic and public policy requires that the rule of strict construction applicable to indemnification for sole negligent liability should also be applicable to sole strict liability. Since the intention of Atlas to indemnify Texas for its sole strict liability has not been expressed in the contract in unequivocal terms, Atlas *975 is not responsible to indemnify Texas for such loss. The Strickland case is overruled insofar as it conflicts with the views expressed herein.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the district court is affirmed at appellant's costs.
AFFIRMED.
GROVER L. COVINGTON, C.J., concurs in the result, but sees no necessity to overrule Strickland.
CARTER, J., dissents with written reasons assigned.
COLE, SAVOIE and LOTTINGER, JJ., dissent for the reasons assigned by CARTER, J.
EDWARDS, J., dissents for the excellent reasons assigned by CARTER, J., and reserves the right to give additional reasons.
JOHN S. COVINGTON, J., dissents for the reasons assigned by Carter, J., and is of the further opinion that Atlas and/or its subcontractor Porche breached an affirmative duty by failing to ascertain if the ingress-egress route would bear the very substantial weight of a loaded cement truck.
CARTER, Judge, dissenting.
I dissent for the reasons that I am of the opinion that the indemnification agreement between Texas and Atlas means exactly what it clearly says and should indemnify Texas in a strict liability situation. Strickland v. Tesoro Drilling Co., 434 So.2d 424 (La.App. 1st Cir.1983), writs denied, 441 So.2d 211, 214, 215 (La.1983), is good law and should not be overruled in any respect.
I cannot agree with the majority's conclusion that the indemnification agreement between Texas and Atlas does not specify that Atlas agrees to indemnify Texas for its sole strict liability. The agreement clearly provides that Atlas will hold Texas harmless for "each and every claim, demand or cause of action and any liability, cost, expense ..., damage or loss ... except such as may result solely from the Company's [Texas's] negligence." (Emphasis added). While the agreement specifically agreed to indemnify Texas for all claims, it specifically excepted only Texas's own negligence. The agreement, however, did not exclude liability for strict liability. Therefore, under the plain language of the hold harmless agreement, Atlas is responsible to indemnify Texas for such loss.
I further believe that the case sub judice is factually distinguishable from Strickland.[1] However, in any event, I believe a better approach would be to not overrule a legally sound decision in any respect.
*976 I respectively submit that logic and public policy dictate the opposite result from that reached by the majority herein.
For these reasons, I respectfully dissent.
NOTES
[1] Indeed, it can be argued it is contra bones mores to contractually indemnify another for intentional acts, especially where they constitute crimes.
[2] Since September 11, 1981, our statutory law has declared it is against public policy to enter into a contractual agreement pertaining to wells for oil, gas or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state which grants indemnification to an indemnitee from his sole or concurrent, negligent or strict, liability. La.R.S. 9:2780; Lirette v. Union Texas Petroleum Corporation, 467 So.2d 29 (La. App. 1st Cir.1985).
[3] Query: Does a person assume the sole absolute liability of another by agreeing to indemnify the other only in general terms?
[4] The record does not show whether the defect predated the Atlas contract or what caused the defect.
[5] The agreement excludes responsibility by Atlas for the sole negligence of Texas, but is silent on the sole intentional, strict and absolute liability of Texas.
[1] In Strickland, the drilling contract contained the following provision on indemnity:

Operator's Indemnification of Contractor: Operator [LL & E] agrees to protect, defend, indemnify and save Contractor [Tesoro] harmless from and against all claims, demands and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party, arising in connection herewith in favor of Operator's employees, Operator's contractors or their employees, ... on account of bodily injury, death or damage to property. (Emphasis added)
On the other hand, the contract in the case sub judice contained the following indemnification provision:
Contractor shall fully defend, protect, indemnify and hold harmless the Company, its employees and agents from and against each and every claim, demand or cause of action and any liability, cost, expense (including but not limited to reasonable attorney's fees and expenses incurred in defense of the Company), damage or loss in connection therewith, which may be made or asserted by Contractor, Contractor's employees or agents, subcontractors, or any third parties, (including but not limited to Company's agents, servants or employees) on account of personal injury or death or property damage caused by, arising out of, or in any way incidental to, or in connection with the performance of the work hereunder, whether or not Company may have jointly caused or contributed to, by its own negligence, any such claim, demand, cause of action, liability, cost, expense, damage or loss, except such as may result solely from the Company's negligence. (Emphasis added)