LABORDE, Judge.
Appellants, J.W. Contractors, Inc., (J.W. Contractors) and Royal Globe Insurance Company, appeal from a judgment of the trial court declaring that a valid indemnity agreement existed between J.W. Contractors and appellee, Scaffolding Rental and Erection Service, Inc. (Scaffolding Rental). We find that the trial court erred in declaring the indemnity agreement to be valid. We reverse and remand.
FACTS
This declaratory judgment action arises out of a suit, by George L. Perkins and his wife for injuries he allegedly sustained when he fell off scaffolding at the Conoco facility in Lake Charles, Louisiana. Mr. Perkins was employed by J.W. Contractors at the time of the accident. J.W. Contractors was performing a “turnaround” in an acid plant at the Conoco refinery. Before the job commenced, the President of J.W. Contractors and the job superintendent met with Eddie Olsen of Scaffolding Rental to arrange for scaffolding for the job. The representatives of J.W. Contractors verbally agreed to lease scaffolding from Scaffolding Rental; no written master contract was ever entered into.
During the course of J.W. Contractor’s operations at the Conoco facility, a representative from Scaffolding Rental visited the jobsite to ascertain the type of scaffolding needed for the job. Scaffolding Rental provided the scaffolding and the labor to *720 erect and dismantle the equipment. Scaffolding Rental employees tracked the equipment to the jobsite. While the scaffolding was being delivered, the truck driver presented J.W. Contractors’ supervisors, James McCasland and Carl Hall, a document entitled “Lease Agreement.” On the front page of the “Lease Agreement” there is a list of scaffolding equipment and columns next to the list which provide blank spaces for quantities to be filled in. Both J.W. Contractors’ supervisors testified that they checked off the quantity of equipment being delivered and matched it to the equipment list on the front page of the “Lease Agreement.”
At the very bottom of this “Lease Agreement” is the following language appearing in bold red lettering:
“READ BEFORE SIGNING!!!
Equipment described herein is rented to and in accordance with the terms and conditions set out above and on the reverse side of this agreement. Lesee [sic] represents that he has read and agrees to same. Lessee employee signing this ticket will be committing his employer to acceptance of the counts shown. Inventory control will be based solely on this signed lease. Lessee acknowledges that all rental rates applicable to the items shown on this lease have been agreed upon with lessor. I have read above and understand and agree, and I accept all counts shown.
X_ Signing for Customer
X_ Scaffolding Rental Employees Signature”
The “Lease Agreements” contained in the record are all signed by James McCasland for J.W. Contractors and Mark Vincent for Scaffolding Rental. On the back of each “Lease Agreement” there are certain enumerated terms and conditions, and of these, the indemnity and entire agreement provisions are relevant to this dispute. The indemnity clause reads as follows:
“Lessee shall indemnify Lessor against, and hold Lessor harmless from any and all claims, actions, expenses, damages and liabilities, including attorney’s fees, arising in connection with the equipment, including, without limitation, its manufacture, selection, purchase, delivery, maintenance, assembly, possession, use, dismantling, operation or return and the recovery of claims under insurance policies thereon, even though such injuries or damages be caused by the sole negligence of Lessor or the joint negligence of Lessor and Lessee. Lessee agrees to promptly notify the Lessor of any such claim and agrees to immediately surrender to Lessor any of the leased equipment involved or connected in any manner with such claim.”
The entire agreement clause provides that:
“Lessee agrees that this documentation forms the entire contract between the parties and any modification of this contract must be in writing and signed by Lessor and Lessee, and specifically state that it forms an addendum to, or modification of, this agreement.”
Both supervisors for J.W. Contractors conceded that they never read the language on the back of the “Lease Agreement.”
Also contained in the record on appeal is an invoice for materials from Scaffolding Rental to J.W. Contractors (named as J.W. Construction on the document). The invoice is dated August 15, 1984, and contains the following language in the bottom right corner:
“Lessee acknowledges that Lessee has read the terms and conditions set forth on the reverse side and agrees that these terms and conditions form an integral part of the lease and Lessee agrees to all such terms and conditions.”
On back of the invoice, there is a set of terms and conditions, similar to those appearing on the “Lease Agreement” with a few important differences. The indemnity provision on the back of the invoice is worded as such:
“Lessee shall indemnify Lessor against, and hold Lessor harmless from any and all claims, actions, expenses, damages and liabilities, including attorney’s fees arising in connection with the equipment, including without limitation, its manufac *721 ture, selection purchase, delivery, possession, use, operation or return and the recovery of claims under insurance policies thereon.”
The material invoice also contains a clause which is identical to the entire agreement provision appearing in the “Lease Agreement.” Paul Johnson, Vice President and Comptroller of J.W. Contractors, testified in his deposition that J.W. Contractors received this invoice of materials at its home office, but that he was not aware that the invoice contained the indemnity language.
INDEMNITY
An indemnitee may be indemnified against the consequences of his own negligence. Polozola v. Garlock, Inc., 343 So.2d 1000 (La.1977); Sutherland v. Hamner, 488 So.2d 486 (La.App. 3d Cir.1986). However, indemnity agreements will not be construed to indemnify an indemnitee against loss resulting to him through his own negligent acts unless such intention is expressed in unequivocal terms. Green v. Taca International Airlines, 304 So.2d 357 (La.1974); Rivers v. Schlumberger Well Surveying Corporation, 389 So.2d 807 (La.App. 3d Cir.1980). The Court in Soverign Insurance Co. v. Texas Pipe Line Co., 488 So.2d 982 (La.1986), observed:
“When there is doubt as to indemnification against an indemnitee’s own negligence liability, however, usage, custom or equity may not be used to interpret a contract expansively in favor of the in-demnitee. In such a case, if the provision is still in doubt after applying the general rules of construction and interpreting the provision in light of the contract as a whole, i.e. if the intention to indemnify against an indemnitee’s liability for his negligence is equivocal, this court has established a presumption that the parties did not intend to indemnify an indemnitee against losses resulting from his own negligent act.”
Soverign Insurance, at 985-86.
In the case at bar, the indemnity clause contained in the “Lease Agreement” specifies that the lessee is responsible for indemnifying the lessor against claims caused by its own negligence, whereas the indemnity provision on the back of the material invoice does not. Both documents contain entire agreement clauses which state that that particular document forms the entire agreement between the parties and any modification must be in writing and signed by both parties. Accordingly, we find that there is ambiguity in the indemnity agreement between J.W. Contractors and Scaffolding Rental and that J.W. Contractors did not express an unequivocal intention to be bound to indemnifying Scaffolding Rental against claims arising out of its own negligent acts.
We find support for our decision in Tirante v. Gulf States Utilities Co., 412 So.2d 128 (La.App. 1st Cir.), writ denied, 414 So.2d 389 (La.1982). In the Tirante case Ciba-Geigy Corporation, among others, sought contractual and tort indemnity from Robert Thibodeaux & Company. Robert Thibodeaux & Company offered to construct Ciba-Geigy Corporation’s Developmental Building as per specifications in its bid proposal. The parties executed a purchase order wherein the offer was accepted and Robert Thibodeaux & Company bound itself to construct the building as specified in the bid. The bid contained language which required Robert Thibodeaux & Company to indemnify Ciba-Geigy Corporation against claims arising out of its own negligence. Ciba-Geigy Corporation subsequently provided “Supplementary General Conditions” to the contract language, which contained an indemnity clause that did not protect the indemnitee against the consequences of its own negligence. The court found that the ambiguity resulting from the “Supplementary General Conditions” when applied to the general conditions of the bid made it apparent that the indemnitor did not express any unequivocal intention to be bound by the agreement to protect the indemnitee against its own negligence.
Similarly, we find that the uncertainty caused by the two different indemnity clauses must be resolved against Scaffolding Rental. Therefore, we hold that *722 J.W. Contractors is not bound to provide indemnity to Scaffolding Rental for claims caused by the negligent acts of Scaffolding Rental.
For the above expressed reasons, the judgment of the trial court is reversed. This case is remanded to the trial court for further proceedings. Costs of this appeal are taxed to Scaffolding Rental and Erection Service, Inc.
REVERSED AND REMANDED.